### Sage and others *vs.* Gittner and others.

By the custom of warehousemen, known and established, they have the right to receive goods from a carrier, if in apparent good order, and advance to the latter his reasonable charges for the carriage of them, and to hold them subject to the lien of the carrier for the amount thus advanced; and if delivered to the owner without immediate payment, at the owner's request, a suit may be maintained to recover the amount advanced to the carrier.

And if the goods have been injured by the carrier, which injury is not apparent or known to the warehouseman, before or at the time of his receiving the goods, the owner must look to the carrier for his damages, and can not *recoupe* the same in an action by the warehouseman.

The plaintiffs were warehousemen residing at the village of Ithaca. The defendants were merchants residing at the same place. In May, 1848, the latter purchased goods in the city of New-York, and agreed with one Downer to ship them to Ithaca for the defendants, and delivered them to the said Downer for that purpose, in good order. They came to the plaintiffs' storehouse at Ithaca, in apparent good order, but one of the hogsheads of sugar proved to have become wet, and damaged on the voyage. The plaintiffs paid to Downer the price of transportation of the goods, and charged it over to the defendants.

The defendants received the goods, but refused to pay to the plaintiffs the full price of transportation; claiming to deduct the amount of damage to the sugar. The plaintiffs proved at the

trial that it was the custom of warehousemen every where, and of their house, to receive the goods from the carriers if in apparent good order, and pay the charges of the carrier, for their transportation, and charge it over against the owner of the goods; and that the goods in question were received by them, and the transportation paid, in pursuance of this custom. The plaintiffs recovered in the justice's court, which judgment was affirmed on appeal to the Tompkins county court, and the defendants appealed to this court.

*S. Crittenden,* for the appellants, cited 8 *Cowen,* 301; 8 *Wend.* 109, 117; *Anthon's N. P.* 57; 2 *Cowen,* 712.

*W. R. Humphrey,* contra.

*By the Court,* SHANKLAND, J.   There is no pretense that the goods were injured by the plaintiffs, or while in their warehouse. But it is alledged that they were injured by the carrier before they came to the warehouse.   The custom of warehousemen to receive the goods and to advance the freight to the carrier, was fully established; and the only legal question in the case is, whether the custom is valid, and whether it precludes the defendants from setting up the same defense against the plaintiffs that he could if the carrier had sued; or in other words, whether the rights of the plaintiffs, by virtue of this custom, are greater than the rights of the carrier.

I am quite clear that this is a valid custom, and binding on the parties.   The defendants were merchants at Ithaca, where the plaintiffs' warehouse was situate, and must have been well aware of the existence of the custom, independent of the presumption of law, that parties engaged in certain branches of trade, or business, are acquainted with all the general customs appertaining to it.

Being acquainted with the custom or usage in question, the defendants must be deemed to have acted in contemplation of it, when they ordered Downer to transport these goods to Ithaca. It became an integral part of the defendants' contract with

Downer, that if he delivered the goods at the warehouse, in *apparent* good order, the warehouseman would, and might, advance the freight to him; and it was likewise an implied authority to the warehouseman to receive the goods, if in *apparent* good order, and to advance the freight to Downer. The *custom became* the contract of all the parties.

This custom is highly convenient to all parties; and its general prevalence the best evidence of its reasonableness.

But the defendants contend that the custom, although proved, does not place the plaintiffs in any better situation than the carrier would be if he were plaintiff; or in other words, that the warehouseman is the assignee of the carrier's claim; and that any defense which would prevail against him, should prevail against the warehouseman. But this view of the case would destroy the custom itself; for I aprehend that no warehouseman would advance freight to the carrier, and run the risk of all defenses which might be interposed as between the owner and the carrier. The warehouseman can not possibly know the exact state of the goods at the time they are shipped, or if he did, he can not be expected to break open the boxes in which they are inclosed, for the purposes of inspection, before he receives them of the carrier. The custom as proved adopts the reasonable rule on this subject. If the goods are in *apparent* good order, at the time of delivery, it is sufficient. A greater degree of diligence, on the part of the warehouseman, ought not to be required. If the carrier fails in his duty, the owner has a remedy directly against him, adequate in all respects to protect himself against loss. But if the warehouseman is made responsible for damage done to goods, in the course of transportation, although such damage is not apparent, it is at least doubtful whether he can recover back his advances, from the carrier, unless some custom to that effect exists, of which we have no proof in this case.

The reasoning of the court in the case of *Allen* v. *Smith*, (8 Cowen, 301,) is not in opposition to the views above expressed. In the case cited there was no general custom proved, that the owners of the forwarding boats on the North river forwarded their goods, in the manner proved in that case, by putting them on

board of other lines of boats, on the canal at Troy. It was only proved that it was the custom of the plaintiff's line, and *some others*, to receive goods from the transportation lines on the Hudson, with which they have no connection, paying the charges from New-York to Troy, delivering them at the places of destination, and charging to, and receiving from the owners, both their own freight and the moneys thus advanced. This evidence came short of proving a general custom, and the defendant in that cause was not bound by the custom of that particular line, unless he had actual notice of it, which was not pretended. (*Clayton* v. *Gregson*, 31 *Eng. Com. L. Rep.* 343. *Wood* v. *Hickok*, 2 *Wend.* 501.)

The case of *Van Santvoord* v. *St. John et al.*, (6 *Hill*, 157,) decides that where goods are delivered to a carrier, marked for a particular destination, without any directions as to their transportation and delivery, save such as may be inferred from the marks themselves, the carrier is only bound to transport and deliver them according to the usage of the business in which he is engaged, whether the consignor knew of the usage or not. In that case the goods were received in New-York by a transportation company whose line ceased at Albany, and that company placed them on board of a canal boat and sent them to the owner at Little Falls, and they were injured on the canal. In an action against the first mentioned company for the injury, it was held, on proof of the uniform custom to forward by canal boats, and to receive pay from the canal boat for the transportation from New-York to Albany, the company was not liable, because the custom made part of the contract. See also 5 *T. R.* 389; 4 *Id.* 581; 17 *Wend.* 305; 5 *Burr. Rep.* 2714; 7 *East*, 224; showing that the place of delivery is governed by custom.

No question was made on the trial as to the duty of the carrier to deliver the goods to the owner in person, instead of the warehouse of the plaintiffs. The custom proved would probably permit of a delivery at the latter place. At all events, the defendants seem to have sanctioned the place of delivery, by accepting the goods of the plaintiff and paying part of the carriage price.

I am inclined to affirm the principle, that by the custom of

warehousemen, known and established, they have the right to receive goods from the carrier, if in apparent good order, and advance to the latter his reasonable charges for the carriage of them, and to hold them subject to the lien of the carrier for the amount thus advanced; and if delivered to the owner without immediate payment, at the owner's request, a suit may be maintained to recover the amount advanced to the carrier, in pursuance of such custom; and that if the goods have been injured by the carrier, which injury is not apparent or known to the warehouseman, before or at the time of his receiving the goods, the owner must look to the carriers for his damage, and can not *recoupe* such damage in an action by the warehouseman.

The judgment of the county court should be affirmed, with costs.

[Tioga General Term, May 6, 1851. *Gray, Mason, Monson* and *Shankland*, Justices.]