JOHN H. STALLMAN AND JOHN FULTON, JR., PLAINTIFFS, v. AGNES L. KIMBERLY AND CHARLES W. JOHNSON, DEFENDANTS.

*A warehouseman's lien is general, and not specific — chapter 526 of 1885.*

Section 1 of chapter 526 of 1885, an act entitled, "An act to establish and define the lien of warehousemen," reads as follows:

" Section 1. A warehouseman or person lawfully engaged exclusively in the business of storing goods, wares and merchandise for hire shall have a lien for his storage charges, for moneys advanced by him for cartage, labor, weighing and coopering, paid on goods deposited and stored with him, and such lien shall extend to and include all legal demands for storage and said above described expenses paid, which he may have against the owner of said goods; and it shall be lawful for him to detain said goods until such lien is paid."

*Held*, that under this act a warehouseman has a general lien, and not simply a specific lien, upon the property mentioned in the act.

That the section is divisible into two parts; the first gives the lien and clearly specifies the subject; the second declares that the lien shall extend to and include *all legal demands for storage* and similar expense which the warehouseman may have *against the owner* of said goods — not simply those existing against the particular goods.

That the extension of the lien by that act to all legal demands for storage and similar expense against the owner is its extension to all other legal demands besides those particular demands already provided for by the common law.

CROSS-MOTIONS made by the plaintiffs and defendants, respectively, for judgment in their favor, upon a verdict for the plaintiffs directed at the New York Circuit on April 11, 1889, subject to the opinion of the court at General Term.

*Preston Stevenson*, for the plaintiffs.

*Charles Stewart Davison*, for the defendants.

BARRETT, J. :

This case was tried upon an agreed state of facts, and there are no exceptions. It presents a single question of law, namely, whether under "An act to establish and define the lien of warehousemen" passed June 13, 1885 (chap. 526), the defendants possessed a general lien upon the property in question.

The act reads as follows :

Section 1. A warehouseman or person lawfully engaged exclusively in the business of storing goods, wares and merchandise for hire shall have a lien for his storage charges, for moneys advanced by him for cartage, labor, weighing and coopering, paid on goods deposited and stored with him, and such lien shall extend to and include all legal demands for storage and said above described expenses paid, which he may have against the owner of said goods ; and it shall be lawful for him to detain said goods until such lien is paid.

In construing this act, the existing state of the law should be considered. A warehouseman then had a specific lien. Of that there can be no substantial doubt. This lien had been asserted in this state in *Schmidt* v. *Blood* (9 Wend., 268), and also in Pennsylvania, in *Steinman* v. *Wilkins* (7 W. & S., 466) ; its existence had been referred to and recognized in *Trust* v. *Pirsson* (1 Hilt. 297), in *Scott* v. *Jester* (13 Ark., 446), and in other cases. Indeed, I find no doubt upon the subject expressed in any case where the specific lien was claimed by a person engaged in the business of warehousing. The lien has been denied in cases where permission was given merely to deposit a chattel in an unoccupied room in a private house. (*Alt* v. *Weidenberg*, 6 Bosw., 176 ; see, also, *Rivara* v. *Ghio*, 3 E. D. Smith, 264 ; *Matter of Kelly*, 18 Fed. R., 528.) Even this was expressly put upon the ground that the bailee was not a warehouseman and that the chattel was not stored in that capacity " so as to have a lien by the rules of the common law." Nor do I think that there was any doubt at the time of the passage of this act that the warehouseman had a specific lien for the various subjects enumerated in the act. If he had a lien for storage charges and for advances of freight made to a carrier (*Sage* v. *Gittner*, 11 Barb., 120) *a fortiori*, he had the same lien for cartage, labor, weighing and coopering. Indeed, the doubt which formerly arose with respect to the lien of a warehouseman had its origin in the supposed limitation of the service to mere house-room and to the absence of either a public duty to receive the goods or of an expenditure thereon of labor and skill.

The real doubt, however, was as to the existence of a general lien. That had also been established with regard to wharfingers, but doubted as to warehousemen. (*Rex* v. *Humpherey*, 1 McClel. & Y., 194 ; *Naylor* v. *Mangles*, 1 Esp., 109 ; *Spears* v. *Hartly*, 3 id., 81 ; 3 Kent, §§ 635, 641 ; Story on Bailments, §§ 452, 453 ;

Pars. on Cont., 111, 268.) There seemed to be no just distinction between the warehouseman and the warfinger, but ever since the doubt expressed by some of the judges in *Rex* v. *Humpherey* the point was left undecided. Yet, in this case, GRAHAM, B., said, that, in his experience, he had always "considered a case of a wharfinger and of a warehouseman as standing on the same ground."

Mr. Story also observes (citation *supra*): "The case of a wharfinger does not, indeed, seem in any respect distinguishable from that of a warehouseman, and it has not in fact, been distinguished from it in any solemn adjudication."

It is not necessary to seek the origin of this doubt nor to analyze its justice. It is sufficient for our purpose that it exists, and that the legislature undoubtedly determined to solve it in favor of the warehouseman. The act in question was not intended to re-establish what was already established, namely, the specific lien, but to place the warehouseman on the same firm footing with the wharfinger as to the general lien. The latter had acquired the general lien, as Lord KENYON observed in *Naylor* v. *Mangles* (*supra*), by repeated proof of usage. In time evidence of the usage was no longer required and it became law.

The statute under consideration settles all questions of usage, renders proof thereof unnecessary, reconciles all existing confusion of mercantile thought or judicial *dicta*; in fine, puts an end to any possible distinction between the two classes. This is the natural reading of the act, and it follows its obvious sense. The section is divisible into two parts. The first gives the lien and clearly specifies the subjects. The second declares that the lien shall extend to and include *all legal demands for storage* and similar expenses which the warehouseman may have *against the owner* of said goods. Not, it will be observed, against the particular goods. That had already been fully provided for in the first division of the section; but against *the owner* of said goods. This second division would have been quite superfluous if the sole object of the act had been to establish and define a specific lien. The warehousemen had that already by the first division of the section, even if not by the existing law. Plainly, then, the *extension* of that lien to all *legal demands* for storage, etc., against the *owner*, is its extension to all *other* legal demands besides those particular demands already pro-

vided for. This statute is to be fairly construed. It cannot be said to be in derogation of the common law, for the question was not absolutely settled at common law. But, even if it had been, as the act does not take away, change or diminish rights of property, life or liberty, the rule of strict construction should scarcely apply. It would seem, also, as thus read, to be a wholesome act, just and reasonable in itself, and tending to facilitate mercantile transfers. Delivery orders will more readily be accepted and honored when the warehousemen are not required to settle each charge before parting with the goods upon which, specifically, such charge is a lien.

The fact is, warehousing has become an immense industry in these days, and the act is nothing more than a fair recognition of the advance. Formerly the wharfinger was in the habit of keeping a warehouse on his wharf, and the warehousing business was a sort of subsidiary appendage thereto. Now, warehousing, as an independent institution, completely dwarfs the wharfinger; and it would be the height of absurdity to retain the general lien in the one case and deny it in the other.

Upon the whole, we are of opinion that the defendants had a general lien upon the goods replevied, and that, consequently, the learned judge erred in directing a verdict for the plaintiffs.

Our judgment, therefore, is for the defendants, with costs.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment for defendants, with costs.