[No. 13212.  Department Two.  February 29, 1916.]

KLOCK PRODUCE COMPANY, *Appellant*, v. DIAMOND ICE & STORAGE COMPANY, *Respondent*.[1]

WAREHOUSEMEN—RECEIPTS—"NEGOTIABLE" FORM.  Warehousemen being permitted by 3 Rem. & Bal. Code, § 3369-1 to make receipts either negotiable or nonnegotiable, a receipt not in the form prescribed, but stamped "negotiable" and so issued, is properly deemed negotiable.

SAME—LIEN FOR OTHER GOODS—NEGOTIABLE RECEIPTS—SURCHARGE. Under 3 Rem. & Bal. Code, § 3369-30, providing that, if a warehouse-man issues a negotiable receipt, the goods shall not be subject to liens except for subsequent storage charges of those goods, unless the receipt expressly. enumerates other charges for which a lien is claimed, such a receipt cannot subsequently be surcharged with liens for other goods not mentioned, upon making a partial withdrawal, by virtue of Id., § 3369-28, providing for such a lien for charges on other goods belonging to the same depositor "wherever deposited," since the later section is expressly made "subject to the provisions of § 3369-30."

SAME—NEGOTIABLE RECEIPTS—LIEN ON OTHER GOODS—SURCHARGE ON PARTIAL WITHDRAWAL.  On the partial withdrawal of goods from a warehouse, held on a negotiable receipt, which, under 3 Rem. & Bal. Code, § 3369-30, cannot be surcharged for other liens not expressly enumerated in the receipt, the warehouseman cannot, against the consent of the holder, alter the old receipt by indorsing thereon a claim of lien for storage of other goods not originally enumerated; and Id., § 3369-12, making a warehouseman liable to transferees of a negotiable receipt upon partial withdrawal of the goods, if they fail to take up or cancel the receipt or indorse a statement of the withdrawals, does not authorize the warehouse to force an exchange of receipts against the consent of the holder or surcharge a negotiable receipt with other liens.

SAME—NEGOTIABLE RECEIPTS—LIEN ON OTHER GOODS—SURCHARGING AS BETWEEN PARTIES.  Rem. & Bal. Code, § 3369-30, providing that, where a warehouseman issues a negotiable receipt, the goods shall not be subject to liens except for subsequent storage charges of those goods, unless the receipt expressly enumerates other charges for which a lien is claimed, was not intended simply for the protection of transferees and third parties, but forbids belated surcharging of a negotiable receipt as between the original parties to the receipt;

[1]Reported in 155 Pac. 414.

the policy of the law being to make negotiable receipts useful in the highest degree and the warehousemen being fully protected by liens on the stored goods (MOUNT, J., dissenting).

PLEADING—AMENDMENT—TRIAL AMENDMENTS—COUNTERCLAIM.   In an action by a depositor of goods against a warehouseman for conversion in refusing to deliver until a wrongfully surcharged lien on other goods was paid, in which the defendant interposed no counterclaim or set-off, it is error, after close of the case, to allow the defendant to amend by claiming equitable relief by way of foreclosure of his lien on the other goods and sale of the goods in suit thereunder.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered October 19, 1915, upon findings in favor of the defendant, in an action for conversion, tried to the court.   Reversed.

*Frank S. Griffith*, for appellant.

*James B. Howe* and *A. J. Falknor*, for respondent.

BAUSMAN, J.—The Klock Company holds defendant's warehouse receipt for cheese.   The statute on warehouse receipts (Laws 1913, p. 279; 3 Rem. & Bal. Code, § 3369-1 *et seq.*) permits the warehouseman to make them either negotiable or nonnegotiable and prescribes for the former a definition.   While this receipt does not conform to that definition, it was specially stamped "Negotiable," was so issued, and was properly deemed negotiable by the lower court.

After getting the receipt, plaintiff, from time to time, withdrew quantities which were regularly indorsed.   On one such occasion, however, the warehouseman also indorsed "subject to warehouseman's lien for storage charges amounting to $534.83."   Now this sum was not due upon the cheese, but upon eggs also stored by plaintiff which the court found had been previously withdrawn.   To this surcharge plaintiff objected, tendering this receipt, paying what was due on the cheese and demanding delivery.   The defendant, however, refused delivery of the cheese because the other charges were

not paid, and in this suit by plaintiff in damages for conversion, tried without a jury, was sustained by the lower court.

Had defendant a right thus to surcharge a negotiable receipt? He points to §§ 27 and 28 of the act (Laws 1913, p. 287; 3 Rem. & Bal. Code, §§ 3369-27, 3369-28). The first gives a lien on the particular goods, the second upon those goods also for charges on others belonging to the same depositor "whenever deposited." Both sections, though, announce the lien as "subject to the provisions of § 30," and this last section, which we italicize in part, reads as follows:

"If a *negotiable* receipt is issued for goods, the warehouseman shall have no lien thereon, except for charges for storage *of those goods* subsequent to the date of the receipt, *unless the receipt expressly enumerates other charges for which a lien is claimed*. In such case there shall be a lien for the charges enumerated so far as they are within the terms of section 27, although the amount of the charges so enumerated is not stated in the receipt." 3 Rem. & Bal. Code, § 3369-30.

The extent of a lien under a negotiable receipt is thus apparently clear. That kind of receipt may indeed carry a lien for other goods also, but, as distinguished from a nonnegotiable receipt, it must say so at the outset.

But, the warehouseman argues, the language "whenever deposited" in § 28 qualifies the provisions of § 30 and the two should be read together. This argument we reject. Neither policy nor natural construction supports that qualification. The words "whenever deposited" have their application against nonnegotiable receipts, but not against negotiable. That is the reason why this § 28 expressly subjects itself to § 30 and not to the sections describing nonnegotiable receipts. So much on the very face of the statute. Now as to its policy. Shall the depositor of a carload of fruit be unable to withdraw a few crates without suffering on the prior negotiable receipt entire surcharge for storage of a thousand barrels of cement of his deposited after that receipt, freely accepted by the warehouseman in the probability that the negotiable fruit receipt would be by as-

signment placed beyond surcharge, still in the warehouse, and themselves bound by this very statute for their own lien? This burdensome and yet logical conclusion from respondent's argument is wholly unnecessary to the warehouseman's protection, for he already has his lien on the cement. We cannot favor the theory of retroactive surcharge. As to negotiable receipts, *previous* charges on other goods may be noted, and they must be noted or they are lost. *Future* charges for subsequent goods are beyond noting in it at all. These two things are plain from both language and policy.

Nor do we overlook § 12 (Id., § 3369-12), which provides that, "where a warehouseman delivers part of the goods for which he had issued a negotiable receipt and fails either to take up and cancel such receipt or to place plainly upon it a statement" of withdrawals, he shall be liable to transferees. We do not agree with respondent, who apparently concludes that this language permits two things, first, that the warehouseman may, on a partial withdrawal, force an exchange of receipts *against the consent of the holder*, and that the statute was not in that language contemplating such exchanges as might occur out of mere convenience by consent; second, that in any such exchange, the warehouseman may issue the new receipt surcharged for other goods when the original was not surcharged. To neither conclusion can we now assent, nor is it necessary now to discuss an argument which might equally give the warehouseman a right to substitute then a nonnegotiable for a previous negotiable receipt; for, should we concede a privilege in that section, we do not see its limits.

These things may be considered when we have before us the issuing of a new receipt in exchange, not here. For what this warehouseman has done on the partial withdrawal is to alter the old receipt, and that, in our opinion, is not the same as issuing a new one. He chose, for reasons of his own, not to offer a new, but to alter the old contract, which

expressly gave the depositor, as we construed § 30, a right to have the cheese back on payment of what should accrue against that alone. We may add that whether the charges on the eggs arose before the receipt was issued for the cheese, or between its date and that of the surcharge, is not clear in this record, but that date is unimportant, since we have to do with a negotiable receipt.

Finally, it is argued that, granting that § 30 forbids belated surcharging of a negotiable receipt, the statute really was looking to the protection of third parties, and that in this suit between original parties the court should give the warehouseman this surcharge. Such doctrines, often tempting to courts, generally lead, though, to embarrassment. If we should let the rule vary in this way we should justify endless contentions as to whether a receipt alleged to be transferred was transferred in good faith, whether the assignment was in legal form, whether the warehouseman had actual notice of it when it was not in legal form, whether the transfer was for value, together with many other contentions that would frequently expose true transferees to loss on technical grounds or put them to laborious proofs which, if we let this statute speak for itself, the paper in his hands would spare him.

The statute itself is simple. It will work no hardship on the warehouseman or anybody if let alone. Consider it as it now stands from the warehouseman's point of view. If he holds accrued charges on other goods, he can avoid just such controversies as this by stamping upon the receipt when he issues it those previous charges. On the other hand, if he has already issued the negotiable receipt and additional goods are deposited, he need not meddle with the previous receipt, for he has his lien on those later deposits.

The policy of this law was to make negotiable receipts useful in the highest degree. No matter whether the depositor has yet transferred it or not, he has reckoned that bailment free for future uses. He must frequently employ

the receipt as collateral under mere equitable assignment and pledge for value without indorsement or delivery, and it frequently promotes the convenience, both of the borrower and of the lender, that it be intrusted back to his hands for partial withdrawal of goods while still held as collateral. The warehouseman having already a lien on other goods, we see no reason for relaxing the section as to negotiable receipts to read into it what is not in it, and to say that, after all, it means something else when the controversy is between the warehouseman and the original party.

We have here a plain contract to deliver these goods "on payment of charges," and no other charges being mentioned, we construe it to be a contract to surrender it on payment of what should accrue against that deposit only. With the special stamp of negotiability then put on it, it was a negotiable receipt, without other charges to be imposed than those named. The warehouseman cannot alter that contract against the consent of the holder.

No counterclaim or set-off was interposed here. All that defendant set up was that he had a right to retain the cheese under his lien. He asked only that plaintiff's suit be dismissed. But when both parties had rested, defendant moved to amend his answer "so as to ask for equitable relief and that his lien be foreclosed and the cheese sold under it." This the court allowed. It gave him what he asked, but the record does not show that the court gave more than was asked. We cannot now, over plaintiff's objection, allow, as a substitute for the lien to which he was not entitled, a counterclaim or set-off never pleaded and never prayed for.

The judgment is reversed, with instructions to enter one in favor of plaintiff for $812.92, with interest from April 23, 1915.

MORRIS, C. J., PARKER, and HOLCOMB, JJ., concur.

MOUNT, J. (dissenting)—If this warehouse receipt had been negotiated, and presented by some person other than

the original depositor of the goods, I could readily agree that the warehouseman would have no right to surcharge the receipt for storage of other goods by the original depositor. The receipt in this case was not negotiated; or if it had been negotiated, came back regularly into the possession of the original depositor, who presented the receipt to the warehouseman and demanded and received a portion of the goods. The surrender of this portion was indorsed upon the receipt. This was the issuance of a new receipt, and under the terms of Laws 1913, p. 288, § 30 (3 Rem. & Bal. Code, § 3369-30), the warehouseman had the right to indorse thereon other charges. No rights of any third person were affected thereby. The warehouseman, at that time, might have canceled the old receipt and issued a new one for the lesser amount of goods. Upon the new receipt he might have enumerated the "other charges for which a lien is claimed." This is apparently conceded by the majority opinion. If the warehouseman may do this, he certainly may make the indorsement upon the original when it is returned by the original depositor for alteration when he takes away a part of the goods originally stored, because the altered receipt in the hands of the original bailor is a new original receipt for the lesser amount of goods. In my opinion, the judgment of the lower court was right, and should be affirmed.

I therefore dissent.