METROPOLITAN COMMERCIAL CORPORATION, Plaintiff, *v.* LARKIN Co., INC., Defendant.

Supreme Court, Erie County, June 22, 1936.

*Busch & Garvey* [*James O. Moore* and *James O. Moore, Jr.*, of counsel], for the plaintiff.

*Saperston, McNaughtan & Saperston* [*Alfred M. Saperston* and *Daniel N. McNaughtan* of counsel], for the defendant.

MacGregor, J. This is an action in replevin. The complaint sets forth two causes of action. In the first, plaintiff demands possession of twenty-three automobiles, it claiming title to them by reason of its possession and title to duly indorsed, negotiable warehouse receipts for each of said cars, issued by the defendant. In the second cause of action, plaintiff demands possession of seventeen of the cars mentioned in the first cause of action upon the additional claim of title to them by reason of its being the owner of chattel mortgages thereon, copies of which have been duly filed.

Plaintiff is a domestic finance corporation engaged in the business of loaning money on various forms of security. Defendant is a domestic corporation engaged in the storage business as a public warehouse.

Prior to April 1, 1930, the Quale Garage Company, Inc., of Buffalo, N. Y., entered into an agreement with defendant for the storage of cars and trucks. By the terms of the said agreement, Quale Garage Company, Inc., agreed to pay three dollars per month or fraction of a month from the date of storage on new autos and trucks stored, and two dollars per month or fraction thereof from the date of storage on old automobiles, payable monthly in advance. Said agreement was modified about June 1, 1930, to two dollars per month on each auto and truck.

Plaintiff entered into an arrangement with the Quale Company to make loans to it on various of its autos and trucks. Upon the delivery to defendant by the Quale Company of each car for the purpose of storage, the defendant issued and delivered to the Quale Company a negotiable warehouse receipt therefor. Thereafter, and on the same day, Quale Company would deliver said warehouse receipts to plaintiff and execute a mortgage to plaintiff covering one or more of such automobiles, and receive a check from plaintiff in the amount of the release value, as set forth in such chattel mortgage. From time to time the Quale Company withdrew automobiles and trucks from the defendant's warehouse and removed them to its showroom for the purpose of display and sale. It was the practice upon the withdrawal from the defendant's warehouse of one or more of the cars for the Quale Company, immediately preceding the withdrawal of an automobile, to deliver to plaintiff its check in the amount of the release value shown in the most recent chattel mortgage covering the same, and thereupon plaintiff delivered to the Quale Company the warehouse receipt for the automobile to be withdrawn, which the Quale Company surrendered to defendant. Thereupon, the Quale Company removed said automobile from defendant's warehouse to its show-room and delivered to plaintiff a new chattel mortgage on said automobile, and, upon the delivery of said mortgage, plaintiff delivered to the Quale Company its check in the amount of the release value stated in said new chattel mortgage. When said automobile was returned to defendant's warehouse the Quale Company delivered to plaintiff its check in the amount of the release value set forth in the last executed chattel mortgage on said automobile, a new warehouse receipt was delivered by defendant to the Quale Company, and immediately thereafter said warehouse receipt was delivered to plaintiff and a new chattel mortgage given by the Quale Company to plaintiff, and plaintiff delivered to the Quale Company its check for the release value stated in the new mortgage.

As a result of this practice each of the seventeen cars which are the subject of the second cause of action was mortgaged by the Quale Company to plaintiff at least twice after the execution of the mortgages. None of these mortgages has been discharged of record, and each of them is of the same form as the certified copy of mortgage attached to the stipulation between the parties herein, signed the 21st day of February, 1936.

No claim is made by the plaintiff that it is entitled to the possession of six of the cars by virtue of its chattel mortgages but by virtue of the negotiable receipts.

In each of the mortgages, plaintiff covenanted to execute a release to the Quale Company of any one of the autos therein and thereby mortgaged, upon the payment to it by the Quale Company of the sum therein stated to be the release value of the said auto.

On or about April 1, 1931, the Quale Company was indebted to defendant in the sum of $6,617.80 for the storing of its cars. On or about the same date the plaintiff tendered to defendant its warehouse receipts of most recent dates for the cars, duly indorsed by the Quale Company and $378 in money, the storage charges due upon the cars as to which the negotiable receipts had been delivered and demanded from defendant the delivery to plaintiff of said automobiles. Defendant refused to deliver said cars to plaintiff, claiming that it had the right to hold said cars for storage charges incurred by the Quale Company upon said cars and other cars theretofore stored with it, and which had been released by defendant prior to the issuance of said warehouse receipts.

It is also stipulated that at the time of the issuance of the last warehouse receipt, under which plaintiff claims, the Quale Company was indebted to the plaintiff in the sum of $12,842.79 in addition to promissory notes which were executed to the plaintiff at the same time as the last chattel mortgages were executed upon the seventeen automobiles, and which promissory notes represent the release value of the said automobiles.

It is also stipulated that at the time of the commencement of the action the Quale Company was indebted to the plaintiff in the sum of $14,421.22, exclusive of the total release values of the automobiles in question.

By arrangement between the parties the automobiles in question were sold for the sum of $9,203.81. It is stipulated that the sale price constituted the fair and reasonable value of each of the cars. The amount realized is held by the plaintiff by agreement between the parties pending the termination of this action.

The claim of the plaintiff is that it is entitled to the possession of the twenty-three cars by virtue of the negotiable receipts issued by the defendant and, in addition, claims that it is entitled to the possession of seventeen of the cars by virtue of the chattel mortgages.

The defendant claims that it is entitled to possession by reason of the fact that it has a lien against them for unpaid storage charges as to the particular cars and other cars which have been surrendered.

The initial question is the right of possession in the defendant for enforcement of a lien for unpaid storage charges as to these particular cars and other cars which have been surrendered by the defendant. The claim of the defendant in this respect is that the negotiable receipts which were issued by it subjected these cars to the unpaid storage charges as to other cars.

Section 112 of the General Business Law gives a lien to a warehouseman against all goods deposited by an owner for storage and other enumerated charges.

Section 113 of the same statute provides for enforcement of the lien created by section 112 against other goods of the same owner in the possession of the warehouseman, whenever deposited.

The rights of the warehouseman under sections 112 and 113 are limited by section 115, which section provides:

" Negotiable receipt must state charges for which lien is claimed. If a negotiable receipt is issued for goods, the warehouseman shall have no lien thereon, except for charges for storage of those goods subsequent to the date of the receipt, unless the receipt expressly enumerates other charges for which a lien is claimed. In such case there shall be a lien for the charges enumerated so far as they are within the terms of section one hundred and twelve, although the amount of the charges so enumerated is not stated in the receipt."

The negotiable receipts issued by the defendant and held by the plaintiff provide for delivery of the cars to the order of the Quale Company upon written indorsement and surrender of the receipt " and the payment of all lawful charges and claims for storage and preservation of the goods and for money advances, interest, insurance, transportation, labor, weighing and coopering, both in relation to said goods and to other goods heretofore received by Larkin Co., Inc., from the above named depositors upon which said charges and claims remain unpaid, for all of which a lien is claimed."

In the case of *Klock Produce Co.* v. *Diamond Ice & Storage Co.* (90 Wash. 67; 155 P. 414), which arose in Washington, the court, after discussing similar sections of the Uniform Warehouse Act, said (p. 69): " The extent of a lien under a negotiable receipt is thus apparently clear. That kind of receipt may indeed carry a lien for other goods also, but, as distinguished from a nonnegotiable receipt, it must say so at the outset."

The statute requires that such charges shall be " expressly enumerated " but, if the charges are " expressly enumerated," the amount of the charges is not required to be stated.

Section 115 is to be read in connection with section 91, which prescribes the form of receipts. Subdivision (i) of that section reads: "A statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien. If the precise amount of such advances made or of such liabilities incurred is, at the time of the issue of the receipt, unknown to the warehouseman or to his agent who issues it, a statement of the fact that advances have been made or liabilities incurred and the purpose thereof is sufficient."

The receipts follow the language of section 112, which enumerates the charges for which a lien may be had by the warehouseman: " for all lawful charges for storage and preservation of the goods; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation to such goods."

There is no express enumeration in the receipts that there were other charges remaining unpaid. The only claim now made is that there were charges unpaid for storage as to these particular cars and other cars not covered by the negotiable receipts. There is no controversy as to the payment of storage charges on the particular cars covered by the receipts accruing subsequent to the date of the receipts. The plaintiff has tendered those charges.

In 3 Uniform Laws Annotated, relating to the Uniform Warehouse Receipts Act, page 63, in connection with what is known as section 115 of the New York statute, the Commissioners on Uniformity make a note stating: " This section is obviously requisite for the credit of negotiable receipts," and, in connection with what is now section 91 of the New York statute, at page 6, state:

" It is obvious also that negotiable receipts should show on their face what charges are claimed against the goods.   *   *   *

" Though it is desired that all warehouse receipts shall conform to the rules here laid down, the essential thing is that negotiable receipts shall do so, and as to them only is a sanction imposed for failing to insert the statutory terms."

In the case of *Smith Bros. Co.* v. *Richheimer & Co.* (145 La. 1066; 83 So. 255) the court says (p. 1079): " It must be observed, too, that the requirement of paragraph (i) of section 2, when the warehouseman does not know the precise amount of advances made or liabilities incurred for which he would have a lien, is that he shall state that advances have been made or that liabilities have been incurred, and the purpose thereof. In other words, if advances have been made he must state that fact, and if liabilities have been incurred he must state that fact."

There is no " express " statement of the fact that charges actually existed as to specific items. Thus the plaintiff is entitled to possession of the automobiles covered by the negotiable receipts upon payment of the storage charges subsequent to the date of the issuance of the receipts.

The next question is the right of the plaintiff to possession of seventeen of the twenty-three cars upon the claim that it holds undischarged chattel mortgages upon them.

The defendant claims that in each instance the chattel mortgage was discharged by the payment of the release value after the

restoration to storage; that the title then reverted to the Quale Company; that the last chattel mortgage was subsequent to the time of storage; and thus the claim of the plaintiff under the chattel mortgages was inferior to the lien of the defendant under its claim against all goods of the Quale Company for prior storage charges as to the particular cars and other cars previously surrendered.

When the defendant in the first instance surrendered possession of the cars it lost its lien and if, when the cars came back into its possession, the title was in the plaintiff as the holder of a chattel mortgage, they could not be held for the debts of the Quale Company, except to the extent of the value of the car in excess of the lien of the chattel mortgage. It is stipulated in this case that the indebtedness to the plaintiff exceeded the value of the cars. They would, of course, be subject to storage charges after the redeposit.

The manifest purpose of the plaintiff was to constantly keep alive the chattel mortgages in the course of the moving of the cars back and forth. It is obvious that a change in place of storage required a change in the terms of the chattel mortgage. Even though in the course of the procedure checks were given by the Quale Company to the extent of the release values stated in the mortgages, it did not follow that the indebtedness secured by the mortgages was paid.

In *Hill* v. *Beebe* (13 N. Y. 556) the court says: " The proposition is indeed quite elementary that the mere act of taking a new security from the same party, and upon the same property, does not merge or extinguish a prior one, where both are of the same quality and degree."

The prior chattel mortgages made after the loss of the lien of the defendant were not discharged and continued in existence as a continuing security to the plaintiff for the payment of the indebtedness of the Quale Company to it. (*Gregory* v. *Thomas*, 20 Wend. 17; *Walker* v. *Henry*, 85 N. Y. 130; *Burritt* v. *Sheffer*, 59 Hun, 628.)

The defendant raises the point that, the receipts having not been duly negotiated until November, 1930, the plaintiff did not become a purchaser in good faith in accordance with the provisions of section 125 of the General Business Law, having at the time of the indorsement knowledge of the fact that there was a claim made by the defendant on account of unpaid storage charges as to other goods and that there was an agreement existing between the defendant and the storage company as to the conditions under which it operated as to the automobiles stored by the Quale Company.

As to the agreement referred to, the stipulation of facts reads: " That prior to the 1st day of April, 1930, Quale Garage Company,

Inc., and defendant entered into an agreement by which defendant agreed to store in such warehouse such automobiles and trucks as said Quale Garage Co., Inc., from time to time offered at the storage rate of three dollars per month or fraction of a month from the date of storage on new automobiles and trucks and two dollars per month or fraction thereof from date of storage on old automobiles, payable monthly in advance. That said agreement was modified on or about June 1, 1930, changing the monthly rate to Two dollars per month on each automobile and truck, but in all other respects continued."

The receipts having been transferred to the plaintiff and not having been duly negotiated by indorsement until some subsequent time, the plaintiff held them in the interim subject to all equities and defenses that the defendant had in relation to them. The agreement referred to does not affect the negotiable receipt at all. The words in the receipt " subject to storage charges per agreement " were not sufficient to charge the plaintiff with notice of the fact that a claim was made against these particular cars for unpaid storage charges as to other cars. The plaintiff as the holder for value of the negotiable receipts was entitled to secure the indorsement of the receipts under section 127 of the General Business Law. There was no agreement between the Quale Company, Inc., and the defendant which was a bar to the negotiation of the receipts which came within the meaning of section 126 of the General Business Law. The agreement only related to rates of storage.

The fact that the plaintiff did have knowledge that there were unpaid charges as to other cars did not affect the negotiable receipt. It had been issued by the defendant. It must be presumed to have known that it might be transferred or negotiated and, if it was negotiated, that the holder of it was entitled to possession of the car or cars that it covered. It erred in not complying with the statute as to the enumeration of specific charges and the plaintiff should not be penalized for accepting it in good faith as I find it did.

Of course, by the mere fact of securing indorsement after knowledge of equities or defenses that existed, it could not secure an advantage, but I find that no such equities or defenses existed as claimed by the defendant.

The defendant also raises a question of fraud, claiming that the removal of the cars from the warehouse and the subsequent chattel mortgages and the restoring of them to the warehouse within short intervals indicated a scheme upon the part of the plaintiff to secure a priority.

Fraud is not to be presumed but must be established. Mere suspicion is not sufficient. The plaintiff is a finance corporation. The defendant is a warehouseman. They were each engaged in their particular line of business. Each was entitled to protect its interest within the law. If the plaintiff had a fraudulent intent, it would seem that when a surrender of the cars was secured in the first instance that it would not, by the terms of the chattel mortgages, or by its consent otherwise, permit the cars to be restored to the defendant's warehouse but would have required them to be placed in some other warehouse. I do not find that any fraud has been established.

The conclusion is, therefore, reached that the plaintiff is entitled to possession of the twenty-three cars by virtue of the ownership of the negotiable receipts; that it is also entitled to possession of seventeen of the cars by virtue of its chattel mortgages.

The fund held by the plaintiff being the amount realized from the sale, pursuant to stipulation, and stipulated to be the fair value of the cars, is $9,203.81.

Judgment in this sum is rendered in favor of the plaintiff, with costs. The stipulated amount of storage due to the defendant upon the twenty-three cars in the event of a finding in the plaintiff's favor is $378. Judgment is rendered in favor of the defendant in that sum, without costs. The counterclaim of the defendant is dismissed, without costs.