## HARBOR VIEW MARINE CORP. v. BRAUDY.

### In re PEARL FISHERIES, Inc.

### No. 4551.

United States Court of Appeals
First Circuit.

April 30, 1951.

Rehearing Denied May 14, 1951.

Jack M. Rosenberg, New Bedford, Mass. (Solomon Rosenberg, New Bedford, Mass., with him on the brief), for appellant.

Louis Stone, New Bedford, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

In this bankruptcy appeal only a narrow point is presented, as to the extent of a warehouseman's lien under the applicable Massachusetts statute.

Harbor View Marine Corporation, appellant herein, is a Massachusetts corporation which conducts a public warehouse and fish-freezing plant in Fairhaven, Massachusetts. Pearl Fisheries, Inc., the bankrupt, had from time to time during the two and one-half years prior to bankruptcy delivered to appellant various lots of fish owned by the bankrupt, for freezing and storage. For each lot as delivered, appellant issued a non-negotiable warehouse receipt to the bankrupt. At the time of the adjudication there remained on deposit in appellant's warehouse eleven of such lots of fish. The bankrupt owed the warehouseman (1) the sum of $258.11, on account of unpaid charges for processing and storage of those eleven lots of fish remaining in the warehouse, and (2) the additional sum of $1,126.84, as unpaid

charges for processing and storage of other lots of the bankrupt's fish previously stored in appellant's warehouse but withdrawn therefrom by the bankrupt prior to bankruptcy. Appellant claimed a general lien on the eleven lots of fish as security for the total amount due on the general account, amounting to $1,384.95. The trustee in bankruptcy maintained that the lien was a specific one, limited in amount to $258.11, the unpaid charges on the lots of fish remaining in the warehouse.

On separate petitions by the warehouseman and by the trustee for determination of the amount of the lien, the referee in bankruptcy determined that the lien was a specific one only, and entered an order finding "the true amount of the lien to be $258.11." This was affirmed by order of the district court entered upon consideration of the warehouseman's petition for review, and the present appeal followed.

The question at issue must be determined by reference to Mass.G.L., C. 105, §§ 32–35, which embody, with no substantial change, the provisions of §§ 27–30 of the Uniform Warehouse Receipts Act. Though this enactment has been on the books in Massachusetts since 1907, Acts and Resolves of Mass.1907, C. 582, it is rather surprising that, so far as we have been able to discover, the Supreme Judicial Court of Massachusetts has never had occasion to determine whether the warehouseman's statutory lien is general or specific. Following are the sections of the law bearing on the present case:

C. 105, § 32 [§ 27 of the Uniform Act] Warehouseman's Lien, Scope of.—"Subject to section thirty-four, a warehouseman shall have a lien on goods deposited or on the proceeds thereof in his hands, for all lawful charges for their storage and preservation; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation thereto; also for all reasonable charges and expenses for notice, and advertisements of sale, and for sale thereof where default has been made in satisfying his lien."

§ 33 [§ 28 of the Uniform Act] Application of Lien.—"Subject to the provisions of the following section, such a lien may be enforced—

"(a) Against all goods, whenever deposited, belonging to the person who is liable as debtor for the claims to secure which the lien is asserted; and

"(b) Against all goods belonging to others which have been deposited at any time by the person who is liable as debtor for the claims to secure which the lien is asserted, if such person had been so intrusted with the possession of the goods that a pledge of the same by him at the time of the deposit to one who took the goods in good faith for value would have been valid. . . ."

§ 34 [§ 29 of the Uniform Act] Loss of Lien.—"A warehouseman loses his lien—

"(a) By surrendering possession; or

"(b) By refusing to deliver the goods when a demand is made with which he is bound to comply under this chapter."

§ 35 [§ 30 of the Uniform Act] Additional Charges for Which Lien Is Claimed.—"If a negotiable receipt is issued for goods, the warehouseman shall have no lien thereon, except for charges for storage and preservation of those goods subsequent to the date of the receipt, unless the receipt expressly enumerates other charges for which a lien is claimed. In such case there shall be a lien for the charges enumerated, so far as they are within the terms of section thirty-two although the amount of the charges so enumerated is not stated in the receipt."

At the common law, a warehouseman had a specific lien for storage charges, enforceable only against the goods to which the charges related. See Lummus on Liens § 72 (1904). This was oddly in contrast with the common law treatment of wharfingers, who had a general lien, enforceable against any of the owner's goods remaining on deposit, as security for unpaid storage charges accumulated on general account. Lummus on Liens § 80 (1904); see discussion in Stallman v. Kimberly, 1889, 53 Hun 531, 6 N.Y.S. 706, affirmed 1890, 121 N.Y. 393, 24 N.E. 939. In a few states, prior to the drafting of the Uniform Warehouse Receipts Act, the

warehouseman's lien had by statute been extended to cover "all legal demands for storage and said above described expenses paid which he may have against the owner of said goods". N.Y. Laws 1885, C. 526, § 1; Mich. Comp. Laws 1897, § 5031. These statutes were construed as giving to warehousemen a general lien like that of the wharfinger. Stallman v. Kimberly, supra; Kaufman v. Leonard, 1905, 139 Mich. 104, 102 N.W. 632. This result was made even clearer in N.Y. Laws 1897, C. 418, § 73. Hence, at the time the Uniform Warehouse Receipts Act was drafted, it was well settled that a warehouseman had at least a specific lien, and in some states there were statutes enlarging the lien into a general one. The various statutes and decisions are collected in Mohun, Compilation of Warehouse Laws (1904).

█ With this background of history, it seems fairly clear to us that the Uniform Warehouse Receipts Act was intended to follow the then existing New York statutory precedent, and to vest in the warehouseman a general lien rather than a specific one. The body of § 27 of the Uniform Act (Mass. § 32, quoted supra), if read in isolation, might seem to grant the warehouseman only a specific lien on goods on deposit for the warehouseman's charges and expenditures in relation thereto, going beyond the common law merely by enlarging the types of charges with respect to which the specific lien was applicable. See Commissioners' Note to § 27 of the Uniform Act; Mohun, The Effect of the Uniform Warehouse Receipts Act, 13 Col.L. Rev. 202, 208 (1913). But when § 27 of the Uniform Act is read in conjunction with § 28 thereof, Mass. § 32 and § 33, the scheme in the draftsman's mind is more readily apparent.

Section 27 of the Uniform Act, Mass. § 32, is primarily designed to define the types of charges to be embraced within the warehouseman's lien. This is indicated by the caption of § 27 of the Uniform Act: "What claims are included in the warehouseman's lien".[1] Under the caption "Against What Property the Lien May be Enforced", § 28 of the Uniform Act, Mass. § 33, provided that the warehouseman's lien might be enforced "(a) Against all goods, whenever deposited, belonging to the person who is liable as debtor for the claims in regard to which the lien is asserted". Thus, reading the two sections together, if the claims in regard to which the lien is asserted are the types of charges defined in § 27, Mass. § 32, the lien therefor is, by force of § 28(a), Mass. § 33(a), a general one good against "all goods, whenever deposited, belonging to the person who is liable as debtor" for such charges. If this is not the effect of the latter section, it is difficult to see what it adds to the statute. Further, as provided in § 28(b) of the Uniform Act, Mass. § 33(b), the lien also is enforceable against "all goods belonging to others which have been deposited at any time by the person who is liable as debtor for the claims in regard to which the lien is asserted if such person had been so entrusted with the possession of the goods that a pledge of the same by him at the time of the deposit to one who took the goods in good faith for value would have been valid."

The Uniform Warehouse Receipts Act was drafted by Professor Williston. See 4 Williston on Contracts, § 1045, n. 8 (Rev. ed. 1936). In his treatise, Professor Williston states (op. cit. § 1058, n. 2) that § 28 of the Uniform Act, Mass. § 33, extends the common law "by giving a general rather than a specific lien"; and for statutory precedent he refers to the earlier New York statute, citing Stallman v. Kimberly, 1890, 121 N.Y. 393, 24 N.E. 939.

█ The foregoing interpretation of the Uniform Act was specifically adopted by decision of the court in San Angelo Wine & Spirits Corp. v. South End Warehouse

1. Such caption was included in the corresponding section of the Massachusetts law as originally enacted, Acts and Resolves of Mass. 1907, C. 582, § 28. Though in the subsequent reenactment of the law in Massachusetts, the phraseology of this caption has been altered to the form now appearing in § 32 thereof, above quoted, there is no reason to suppose that the Massachusetts legislature intended thereby to accomplish any substantive change.

Co., 1936, 19 Cal.App.2d Supp. 749, 61 P.2d 1235. In several other jurisdictions there are dicta to the same effect. In re Taub, 2 Cir., 1925, 7 F.2d 447, 451; Klock Produce Co. v. Diamond Ice & Storage Co., 1916, 90 Wash. 67, 155 P. 414; Metropolitan Commercial Corp. v. Larkin Co., Inc., 1936, 168 Misc. 31, 4 N.Y.S.2d 326, affirmed Per Curiam, 4th Dept. 1939, 257 App.Div. 612, 15 N.Y.S.2d 18. See also Wilson Distilling Co., Inc. v. Foust Distilling Co., D.C.M.D.Pa.1943, 51 F.Supp. 744; State Bank of Wilbur v. Almira Farmers' Warehouse Co., 1923, 123 Wash. 354, 212 P. 543; Id., 1924, 131 Wash. 623, 230 P. 817. There is a dearth of authority to the contrary. In view of § 66 of the Massachusetts Act, providing that it "shall be so interpreted and construed as to accomplish its general purpose to make uniform the law of those states enacting like laws", we have no doubt that the Supreme Judicial Court of Massachusetts would interpret its Warehouse Receipts Act as giving warehousemen a general lien, in conformity with the interpretation of the Uniform Act in other jurisdictions, and in conformity with the interpretation of it by its distinguished draftsman.

It is to be noted that we are concerned in this case with non-negotiable warehouse receipts.

In the case of negotiable receipts, the general lien given to warehousemen by § 33 of the Massachusetts Act is necessarily qualified by § 35 thereof dealing specifically with the subject matter of negotiable receipts, and providing that where a negotiable receipt is issued for goods, "the warehouseman shall have no lien thereon, except for charges for storage and preser-vation of those goods subsequent to the date of the receipt, unless the receipt expressly enumerates other charges for which a lien is claimed."[2] The reason for this fundamental distinction between negotiable and non-negotiable receipts is obvious. See the Commissioners' Note to § 5 of the Uniform Act, explaining that a negotiable warehouse receipt is the negotiable representative of the goods, whereas a non-negotiable receipt is merely evidence of an ordinary contract of bailment. When the warehouseman issues a negotiable receipt, he must anticipate that the receipt may pass into the hands of a bona fide purchaser for value; the use of the negotiable receipt as an instrument of commercial credit would be greatly impaired if the subsequent assignee of the receipt had to take subject to a secret lien of the warehouseman for storage charges, advances, etc., on goods other than those covered by the receipt. Therefore the broader claim of lien must be indicated on the negotiable receipt itself. When a non-negotiable receipt is issued, these considerations are inapplicable. Such a receipt is not normally designed to be used as an instrument of commercial credit, and should the bailor assign the non-negotiable receipt to another, the transferee cannot expect to stand any better than did his transferor. Where only non-negotiable receipts are involved, it is entirely reasonable that the warehouseman should be able without prejudice to allow a customer to withdraw part of his goods from the warehouse without paying the charges thereon, so long as the warehouseman retains other goods of the customer which are amply sufficient in value to serve as security for the debt on the general account.

2. This was emphasized in the Uniform Act by the fact that § 28 giving the warehouseman a general lien was expressly made subject "to the provisions of section thirty [which corresponds with § 35 of the present Massachusetts Act dealing with negotiable receipts]". When the Uniform Act was adopted in Massachusetts in 1907, an additional section was inserted by the legislature at the beginning, with the other sections following in order as in the Uniform Act but with section numbers larger by one in each instance. Section 28 of the Uniform Act thus became § 29 of the Massachusetts Act, but the legislative draftsman evidently failed to change the cross-reference in § 29 to correspond to the new numbering. This inadvertent, and we think inconsequential, error was perpetuated in the subsequent reenactment of the Uniform Act in Massachusetts, so that the present § 33 of the Massachusetts Act is expressly to be subject "to the provisions of the following section," namely, § 34, providing that a warehouseman loses his lien by surrendering possession.

In supporting the order of the referee, the district judge relied upon § 34 of the Massachusetts Act, providing that the warehouseman loses his lien by surrendering possession. We do not think that § 34 has any bearing on the present problem. The corresponding provision in § 29 of the Uniform Act was evidently not regarded by the draftsman of the Uniform Act as militating against the view that § 28 thereof, Mass. § 33, gave the warehouseman a general lien. The natural meaning of § 29 of the Uniform Act, Mass. § 34, is that the warehouseman's lien does not follow the goods once the warehouseman surrenders possession of them; which would be true whether the warehouseman is held to have a general or only a specific lien. Though the lien may be enforced only against goods of the owner which the warehouseman retains in his possession, it is entirely consistent with this that, as to such goods, the lien of the warehouseman is a general one giving security for unpaid charges on the general account between the warehouseman and the owner.

■ Notwithstanding that the warehouseman's statutory lien is a general one, it would not be against public policy for the warehouseman, in the storage agreement, to restrict himself to a specific lien. This case was heard by the referee on an agreed statement of facts, which recited that the warehouseman had issued to the bankrupt non-negotiable warehouse receipts for the lots of fish in question, but did not set forth the provisions of such receipts. It seems that at the hearing the referee, quite properly, asked to see a typical receipt, and one was supplied to him by counsel. In his memorandum the referee stated: "The storage agreement, one is enclosed herewith and made part of the record, does not state that the lien attaching to one lot can be extended to take care of the charge for storage of another lot. Each lot was a separate and distinct contract, and the warehouseman is bound by the terms of his own receipt. The warehouseman's lien is good only on the lot to which it applies." Though the referee forwarded the presumably typical non-negotiable receipt as part of his certificate to

the district court, to be considered on the petition for review, for some reason or other the terms of such non-negotiable receipt do not appear in the record now before us. However, appellee included as an appendix to his brief what purports to be a copy of the non-negotiable receipt issued for one of the eleven lots of fish remaining in the warehouseman's hands at the time of the adjudication in bankruptcy. We shall assume that this document is what it purports to be.

■ Such receipt, under the heading "Conditions", after stating that "the property described in the within receipt is hereinafter referred to as 'deposited property'", provides, in clause 3: "All charges of the Company for storage, labor, insurance and other services and expenses in connection with the deposited property shall be a lien upon said property until fully paid, and until that time the Company shall be entitled to exclusive possession and custody of said property." Clause 7 provides that "acceptance of this receipt shall constitute an acceptance of all the terms and conditions set forth therein."

Clause 3 of the receipt has reference only to the warehouseman's specific lien on the deposited property for the various charges in connection therewith. It does not relate to the wider general lien which is given the warehouseman by statute even though not expressly contracted for. It is quite true, as the referee says, that the storage agreement "does not state that the lien attaching to one lot can be extended to take care of a charge for storage on another lot." If the statute had not given a general lien, it is clear that no such lien could be found in the contractual terms of the storage agreement. But the statute did give a general lien, and the terms of the non-negotiable warehouse receipt do not, in our opinion, sufficiently indicate any intention of the parties by contract to curtail what would otherwise be the statutory lien. In San Angelo Wine & Spirits Corp. v. South End Warehouse Co., 1936, 19 Cal.App.2d Supp. 749, 61 P.2d 1235, the non-negotiable warehouse receipt which was there issued contained a provision quite similar to the one in clause 3 of the receipt in the case at

bar; yet the warehouseman was held to have a general lien in accordance with the provisions of the Uniform Warehouse Receipts Act.

Our conclusion on the present appeal is that the lien should have been held to be good for the larger amount of $1,384.95, instead of being restricted to the sum of $258.11 representing the unpaid charges applicable to the eleven lots of fish remaining in the warehouseman's hands.

The order of the District Court is reversed, and the case is remanded to the District Court for further proceedings in conformity with this opinion; the appellant recovers costs on appeal.

### On Petition for Rehearing.

MAGRUDER, Chief Judge.

Appellee has filed a brief petition for rehearing which, without otherwise challenging our analysis of the applicable statute and the authorities, fixes on a single sentence of our previous opinion the purport of which he completely misapprehends.

The sentence referred to is as follows:

"Where only non-negotiable receipts are involved, it is entirely reasonable that the warehouseman should be able without prejudice to allow a customer to withdraw part of his goods from the warehouse without paying the charges thereon, so long as the warehouseman retains other goods of the customer which are amply sufficient in value to serve as security for the debt on the general account."

Appellee argues that the record does not warrant a finding that, as the bankrupt withdrew fish from the warehouse without payment of the respective charges thereon the warehouseman retained other fish of the bankrupt sufficient in value to serve as security for the debt on the general account; that on the basis of the above-quoted sentence in our opinion, for example, no lien could be enforced against the fish of the bankrupt deposited with the warehouseman in November of 1949 for the charges due on fish which had been surrendered to the bankrupt many months earlier; that therefore the scope and extent of the warehouseman's lien as claimed by appellant warehouseman herein is considerably greater than the scope and extent of the warehouseman's lien as defined by this court.

We thought it was clear enough from our opinion as a whole that the above sentence was not intended to define and limit the scope of the warehouseman's lien. It was only an argument to support the reasonableness and good sense, both from the point of view of the warehouseman and of the depositor, of our interpretation of the statutory lien as being a general rather than a specific one. Of course, if the warehouseman permits the withdrawal of all the goods on deposit at a particular time, without payment of the charges thereon, he gives up the lien for the time being and becomes an unsecured creditor. The warehouseman can do this if he chooses. But if later the depositor puts other goods in the warehouse, the lien, being a general one, will entitle the warehouseman to hold such goods as security not only for the charges thereon, but also for the unpaid charges on the general account. This follows from the very nature of a general lien. It does not matter when the goods, upon which the lien is asserted, were deposited; that is apparent from the language of § 33 of the Massachusetts Act, "Against all goods, *whenever deposited, * * *"* [italics added]. We had already pointed this out in a sentence earlier in our opinion, as follows: "Thus, reading the two sections together, if the claims in regard to which the lien is asserted are the types of charges defined in § 27, Mass. § 32, the lien therefor is, by force of § 28(a), Mass. § 33(a), a general one good against 'all goods, whenever deposited, belonging to the person who is liable as debtor' for such charges."

The petition for rehearing is denied.