**LAWRENCE WAREHOUSE COMPANY,**
Appellant,

v.

**Leo P. McKEE, Trustee of Seaboard Glass Co., Bankrupt, Appellee.**

**No. 19025.**

United States Court of Appeals
Fifth Circuit.

April 4, 1962.

Robert M. Sturrup, Chas. H. Gautier, Dean, Adams, Fischer & Gautier, Miami, Fla., for appellant.

Harold Friedman, Herbert U. Feibelman, Feibelman, Friedman, Hyman & Durant, Miami, Fla., for appellee.

Before HUTCHESON, WISDOM and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

The appellant here entered into a field warehouse arrangement with Seaboard Glass Company, now the bankrupt. It consisted of a lease to appellant of all of the premises of the bankrupt except a small office in the same building. The

lease was for a consideration of One Dollar ($1.00) per year, with the premises to be used for the conduct of a field warehouse under a tenancy from month to month and until terminated by written notice of thirty days and after all warehouse receipts or other evidence of storage representing commodities stored on the premises and issued by appellant had been surrendered.

This lease was coupled with a field warehouse agreement [1] wherein appellant was employed by the bankrupt to establish and operate a field warehouse and to provide field warehouse services required by the bankrupt. The services

contemplated by the agreement were the warehousing of glass and related commodities and appellant was to be paid storage charges with respect to commodities represented by warehouse receipts or other evidences of deposit issued by appellant for borrowing purposes of the bankrupt on one basis, and on another basis in the event it issued warehouse receipts or other evidences of deposit for other than borrowing purposes. Appellant was given a continuing lien on all commodities deposited as security for its charges, costs and expenses.

Non-negotiable warehouse receipts were issued by appellant to a named bank on glass deposited by the bankrupt, and

1. In pertinent part:

"Upon the terms and conditions hereinafter set forth, Depositor hereby employs Lawrence to establish and operate all field warehouses and provide all usual field warehouse services required by Depositor's business, and Lawrence hereby accepts said employment.

"1. Depositor shall lease, or cause to to be leased, to Lawrence, upon Lawrence's form of Field Warehouse Lease, adequate warehouse storage space for the warehousing of commodities. Said warehouse storage space shall be so located and constructed as to assure the proper storing and safety of warehoused commodities.

"2. The following commodities will be warehoused at the rates hereinafter set forth: Heavy Sheet, Plate, Window, and Mirror Glass; Glass Doors and Store Front Metal. Other commodities acceptable to Lawrence will be warehoused at mutually satisfactory rates.

"3. Depositor shall pay to Lawrence for the services rendered hereunder (whether the services are rendered with respect to the commodities of Depositor or with respect to commodities of third parties deposited at the request of Depositor) the charges hereinafter set forth:

"(a)

"I. If in the performance of its duties hereunder Lawrence issues its warehouse receipts or other evidences of deposit for borrowing purposes Depositor shall pay Lawrence the following storage charges with respect to the commodities represented by said receipts of evidences of deposit:

"1/8th of 1% per month or fraction thereof of the Depositor's Declared Value as shown on face of warehouse receipts.

\*　\*　\*　\*　\*

"II. If in the performance of its duties hereunder Lawrence issues its warehouse receipts or other evidences of deposit for other than borrowing purposes Depositor shall pay Lawrence the following storage charges with respect to the commodities represented by such receipts or evidences of deposit:

"1/5th of 1% per calendar month or fraction thereof of the Depositor's Declared Value as shown on face of warehouse receipts.

\*　\*　\*　\*　\*

"5. As security for all charges, costs, and expenses earned or incurred by Lawrence hereunder, Lawrence shall have a continuing lien on all commodities deposited.

\*　\*　\*　\*　\*

"8. In the event no warehouse receipts are outstanding at the beginning of any contract year and none are issued during said contract year and field warehouse storage or service is not required during such contract year, the obligation of Depositor to pay the charges hereinabove set forth shall be suspended, and thereafter the term of this agreement shall be extended one year for each year of such suspension. 'Contract year' as used herein shall mean the twelve months immediately following the date of this agreement, and each successive twelve month period thereafter.

"9. This agreement shall continue in full force and effect for three years from the date hereof, and thereafter for successive three year terms unless either party gives to the other written notice of intention to terminate at least ninety days prior to the expiration of the then current three year term; \*　\*　\*."

also to two glass merchants who deposited glass in the warehouse for release on terms to the bankrupt. The commodities covered by warehouse receipts were turned over to the receipt holders by appellant without collecting charges due appellant. At the time of the bankruptcy commodities owned by the bankrupt valued at some Six Thousand Dollars were located in the warehouse and appellant claimed a general lien on these commodities to secure the charges accrued on the receipted goods.

The lien was claimed under §§ 678.27 and 678.28, Florida Statutes, F.S.A., which sections are the same as the corresponding sections (27 and 28) of the Uniform Warehouse Receipts Act. This statute does indeed give a warehouseman a general lien on goods deposited for his storage charges and expenses, and the lien may be enforced against all goods whenever deposited belonging to the debtor. Under the common law a warehouseman was entitled only to a specific lien on the goods in storage but under the Uniform Act and the Florida statute which followed it the lien was made general. Harbor View Corporation v. Brandy, 1 Cir., 1951, 189 F.2d 481; 4 Williston on Contracts, § 1058, n. 2 (Rev.Ed. 1936).

The Referee in Bankruptcy found that these commodities were not represented by warehouse receipts and were not deposited with appellant in accordance with the statute, and thus were not subject to the lien of appellant to the detriment of the Trustee in Bankruptcy. The District Court affirmed, and the appeal here is from that affirmance.

A "Warehouseman" within the meaning of the Florida Statute and the Uniform Act is a person lawfully engaged in the business of storing goods for profit. Section 58, Uniform Act; § 678.54, Fla. Statutes, F.S.A. The difference however between an ordinary warehouseman and one engaged in field warehousing is worthy of note here.

Field warehousing is a term applied to an arrangement whereby a wholesaler, manufacturer, or merchant finances his business through the pledge of goods remaining on his premises. The arrangement is valid and effective where there is an actual delivery to the warehouseman by the bailor who has hired the warehouseman and given him exclusive possession of the warehouse goods. The warehouseman in turn issues warehouse receipts which serve to secure loans made by third parties to the bailor on the security of the deposited goods. In effect, it is an arrangement whereby the borrower, instead of taking his goods to the warehouse, arranges for the warehouseman to come to his premises. It is a limited type of warehousing as distinguished from a public warehouse. Union Trust Company v. Wilson, 1904, 198 U.S. 530, 25 S.Ct. 766, 49 L.Ed. 1154; Heffron v. Bank of America, 9 Cir., 1940, 113 F.2d 239, 133 A.L.R. 203; Bradley v. St. Louis Terminal, 8 Cir., 1951, 189 F.2d 818; Barry v. Lawrence Warehouse Company, 9 Cir., 1951, 190 F.2d 433; 133 A.L.R. 209; 56 Am.Jur., Warehouses, § 85, p. 361; and Friedman, Field Warehousing, 42 Col.L.Rev. 991 (1942).

This case turns on whether or not the commodities on which the lien was claimed were *deposited* with the warehouseman within the meaning of the Florida Statute under which the lien was claimed. Appellant substantially asserted the affirmative of the issue and thus had the burden before the referee of showing facts entitling it to the lien. Aetna Insurance Company of Hartford, Conn. v. Tayor, 5 Cir., 1936, 86 F.2d 225. And first of all appellant had to show the necessary deposit. The referee found that the goods were not so deposited. We must decide if this finding was clearly erroneous. Gunzburg v. Johannesen, Trustee, 5 Cir., 300 F.2d 40; Gen. Orders in Bankruptcy 36 and 47, 11 U.S.C.A. following § 53; Rule 52(a), Fed. R.Civ.P., 28 U.S.C.A. and 2 Collier, Bankruptcy, § 39.16 at p. 1473. The finding of the Referee is buttressed by the denial of the petition to review by the District Court. Gunzburg, supra.

The finding of the Referee of no deposit was not clearly erroneous on the

record before us which is barren of evidence of storage or deposit. It does not disclose what the commodities on which the lien is claimed consisted of, when they were put in the warehouse, how they happened to be in the warehouse, who was in charge of them, and who was responsible for them. There was testimony as to the general conduct of the warehouse but it was in no way related to these particular commodities.

The proof wholly failed to show that the commodities here were deposited with the warehouseman. At most it showed only that they were in the leased premises. Unless deposited they cannot be subject to the statutory lien. Cf. Roehl Storage Company v. Wilson, Sup. Ct.Mich., 1934, 268 Mich. 691, 256 N.W. 598, 95 A.L.R. 1525 where no lien was created because the owner neither stored nor assented to the storage of the goods.

Appellant failed to carry the requisite burden of showing a deposit and thus the judgment appealed from must be and is

Affirmed.