**WHITNEY NATIONAL BANK OF NEW ORLEANS et al., Appellants,**

v.

**William C. SANDOZ, Trustee, Pine Grove Canning Company, Inc., Bankrupt, Appellee.**

**No. 21551.**

United States Court of Appeals
Fifth Circuit.

June 23, 1966.

**606**

Paul J. Thriffiley, Jr. (now deceased), New Orleans, La., Minos H. Armentor, New Iberia, La., Joseph H. Stephens, Houston, Tex., G. Henry Pierson, Jr., New Orleans, La., Lawrence E. Donohoe, Jr., Andrew J. S. Jumonville, Lafayette, La., for appellants.

Wm. A. Brinkhaus, Opelousas, La., for appellee.

Before WOODBURY,* and JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge.

By this appeal this Court has for review a decision of the district court affirming an order of its Referee which held invalid, in a conventional bankruptcy proceeding, warehouse receipts issued under a field warehousing arrangement on canned goods of the bankrupt which it had pledged to banks, including the appellants. In re Pine Grove Canning Company, D.C., 226 F.Supp. 872. We affirm and express our agreement with the conclusions of the district court. There is little that need be said in addition to that which the district court has so well said. The district court has set out the factual situation and it need be only highlighted here.

The bankrupt, Pine Grove Canning Company, operated vegetable canning plants in two Louisiana parishes. In order to provide financing upon the security of its inventory of canned goods, it made an arrangement for the issuance of warehouse receipts purporting to represent canned goods in storage. Pine Grove made a lease of a part of its canning plants to Emile Duchamp, an attorney, who was nominally a warehouseman for a brief period. He was succeeded by Nelius Bordelon, an automobile dealer who procured a license as a warehouseman. Pine Grove retained possession of the warehouse space and its contents, and moved goods in and out without asking permission of or the giving of notice to the so-called warehouseman whose principal and perhaps sole function was to affix his signature to warehouse receipts describing merchandise and reciting its storage in the warehouse. He was a warehouseman only in name. There was no separation of the various kinds, grades and sizes of canned goods. There was no attempt to mark or otherwise designate any of the merchandise so as to identify any particular goods with any specific receipt.

One or more of the banks which had made loans to Pine Grove on the purported pledge of goods represented by warehouse receipts was advised of the insufficiency of the goods in storage to cover the outstanding receipts. At the instance of the bankers, Edmund De Jaive took over the warehouses with the assent of Bordelon and excluded Pine Grove from further access to the warehouse area. Three weeks later De Jaive turned the keys over to the State Warehouse Commission which, a few days later, surrendered the keys pursuant to an order of the Referee in Bankruptcy.

---

* Senior Circuit Judge of the First Circuit, sitting by designation.

"Field warehousing," as this Court has previously said, "is a term applied to an arrangement whereby a wholesaler, manufacturer, or merchant finances his business through the pledge of goods remaining on his premises. The arrangement is valid and effective where there is an actual delivery to the warehouseman by the bailor who has hired the warehouseman and given him exclusive possession of the warehouse goods. The warehouseman in turn issues warehouse receipts which serve to secure loans made by third parties to the bailor on the security of the deposited goods. In effect, it is an arrangement whereby the borrower, instead of taking his goods to the warehouse, arranges for the warehouseman to come to his premises. It is a limited type of warehousing as distinguished from a public warehouse." Lawrence Warehouse Company v. McKee, 5th Cir. 1962, 301 F.2d 4. See also Whitney, Law of Modern Commercial Practices 938, § 664; Financing Through Field Warehousing, 69 Yale L.J. 663.

For warehouse receipts issued by a field warehouseman to have validity they must be issued by a bona fide, independent warehouseman. The borrower cannot be his own warehouseman and receipts issued by one who is a warehouseman in name only can have no validity. The portion of the borrower's property set aside as a warehouse must be under the exclusive control of the warehouseman. The warehoused goods must be in the exclusive possession of the warehouseman, with the borrower excluded as well as others. There must be adequate markings of the warehouse area and of the warehoused goods. The goods must be so stored and so described in the warehouse receipts that there can be an identification of specific goods to match particular descriptions. Goods are to be released only upon the production and surrender of the receipts covering the goods withdrawn. Security Warehousing Co. v. Hand, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117, 11 Ann.Cas. 789; Lawrence Warehouse Company v. McKee, supra; Pittman v. Union Planters National Bank & Trust Co., 6th Cir. 1941, 118 F.2d 211, cert. den. 314 U.S. 632, 62 S.Ct. 65, 86 L.Ed. 507; In re Spanish-American Cork Products Co., 4th Cir. 1924, 2 F.2d 203, cert. den. Western Nat. Bank of Baltimore v. Chapman, 266 U.S. 634, 45 S.Ct. 225, 69 L.Ed. 479; Whitney, Law of Modern Commercial Practices 940 et seq., §§ 666–668. These requirements are the general rules and are, as found by the district court, applicable in Louisiana under the Uniform Warehouse Receipts Act, LSA–R.S. 54:1–54:58. The requirements were not met. The transactions were sham, and the good faith of the lenders could not inject validity into the documents which were warehouse receipts only in form.

The efforts made by De Jaive to salvage the arrangement came too late. He could not undo what had been done. He could not do what had been left undone. His taking possession and excluding the borrower could not give life to the spurious warehouse receipts previously issued.

No comfort can be afforded to the lending banks by the fact that the Louisiana State Warehouse Commission gave certificates, contrary to the facts, that the warehousing was being properly conducted. The issuance by a state commission of a warehouseman's license and of certificates of proper performance by the warehouseman will not supply the lack of the essentials of validity in the field warehousing arrangement.

The judgment of the district court is affirmed.