241 So.2d 816 (1970)
GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff-Appellant,
v.
Emmett H. STOMA, et al., Defendants-Appellees.
No. 3243.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1970.
*817 W. Ellis Bond, Lake Charles, for plaintiff-appellant.
Stockwell, St. Dizier, Sievert & Viccellio by Emmett Sole, Russell T. Tritico, Lake Charles, for defendants-appellees.
Emmett H. Stoma, in pro. per.
Before FRUGÉ, SAVOY and MILLER, JJ.
MILLER, Judge.
Plaintiff General Motors Acceptance Corporation filed suit seeking a money judgment of $3,624.96 plus interest and attorney's fees against defendant Emmett H. Stoma, and recognition of a first lien and privilege on a 1969 Buick sedan in the possession of defendant Russell T. Tritico, who is claiming ownership of this auto free from any encumbrance. In addition to Mr. Stoma and Mr. Tritico, Mrs. Linda S. Perkins Miller and Mr. William S. Buchert were named as defendants. The trial court rendered judgment in favor of GMAC and against Emmett H. Stoma for $3,624.96 with 5% interest from October 15, 1969 until paid, and 25% attorney's fees but rendered judgment in favor of defendants Tritico, Miller and Buchert rejecting GMAC's claim for recognition of a lien and privilege on the 1969 Buick. GMAC appealed to this court from the judgment denying the recognition of its privilege on the Buick. Mr. Stoma made no appeal from the judgment rendered against him.
We affirm the decision of the trial court.
There is no serious dispute about the facts. GMAC purchased a Texas conditional sales contract through its Galveston, Texas office in the early part of 1969. This contract was recorded with the Motor Vehicle Bureau of the State of Texas and a certificate of title was issued in the name of Emmett H. Stoma, with the title certificate being forwarded to GMAC's Galveston office. At the time of the purchase of this 1969 Buick, defendant Stoma gave a Beaumont, Texas address. In May of 1969, several months after the purchase, GMAC learned that Stoma was receiving mail and forwarding payments to GMAC from a Lake Charles, Louisiana, address. On July 2, 1969 GMAC forwarded to Stoma a new payment coupon book to the Lake Charles address and thereafter directed other correspondence relating to its contract to him at that address.
On February 14, 1966, defendant Linda S. Perkins (since married, Miller) obtained a judgment in the amount of $1,600.00 in the Fourteenth Judicial District Court against Stoma. In that suit Mrs. Miller was represented by defendant Russell T. Tritico, attorney. On June 18, 1969, Mrs. Miller was adjudicated a bankrupt in the United States District Court for the Western District of Louisiana and defendant William S. Buchert was named trustee in bankruptcy. On October 15, 1969, Mr. Tritico, acting as counsel for Mrs. Miller, caused to be issued in the Fourteenth Judicial District Court a writ of fieri facias directed to the Sheriff of Calcasieu Parish ordering him to seize, advertise and sell a 1969 Buick automobile in the possession of Emmett H. Stoma. The Buick was seized, notice of seizure was served upon Stoma and the automobile was advertised for public sale. It was appraised for sale at $3,675.00. On November 24, 1969, Mr. Tritico, who had been told by Mr. Stoma that GMAC had a mortgage on the Buick, wrote to GMAC at its Galveston office advising them that the automobile had been seized and requested a pay off balance, the date of the last payment and the amount of each payment. Although the letter advised GMAC that the Buick was to be sold, *818 the date of the scheduled sale, December 3, 1969, was not stated in the letter. Mr. Tritico received no reply to his November 24, 1969 letter until he returned to his office after having personally bought the Buick at the December 3, 1969 sale for the sum of $2,450.00 representing two-thirds of its appraised value. In the morning's mail, which he had not seen prior to the sale, was a letter from GMAC advising of the balance due on the contract.
GMAC presented the testimony of one of its employees, Bob Gibbs. Mr. Gibbs testified that in May of 1969 they had received a change of address on Stoma and on July 2, 1969 they forwarded a new GMAC coupon book to Stoma at 1532 12th Street, Lake Charles, Louisiana. Mr. Gibbs admitted that at no time did GMAC take any steps to protect its lien in Louisiana in spite of the fact that after July 2, 1969 GMAC's records reflected the permanent mailing address of Stoma to be in Lake Charles, Louisiana. He testified that on November 5, 1969 they referred the Stoma account to the Lake Charles office for a follow up because they didn't know exactly what was going on. He stated that the Lake Charles office had contacted Stoma on November 7, 1969 and at that time GMAC determined from Stoma and apparently from informal discussions with the Calcasieu Sheriff's office that the car had been seized and was scheduled for sale. He testified that they never received a telephone call from Mr. Tritico relative to this account nor had they called him in response to his letter of November 24, 1969. Mr. Gibbs stated that on December 1, 1969 they wrote to Mr. Tritico advising him of the status of the account. This was the letter received by Mr. Tritico shortly after the sale on December 3, 1969. Mr. Gibbs admitted that GMAC had a regularly retained attorney in Lake Charles.
Plaintiff took the deposition of defendant, Mr. Russell T. Tritico. Mr. Tritico acknowledged that he know that Mrs. Miller had been adjudicated a bankrupt at the time of the seizure of the Stoma Buick on October 15, 1969. He acknowledged that Stoma told him prior to the sale that he, Stoma, owed a balance to GMAC in Galveston and that was why he wrote his letter of November 24, 1969 to GMAC. He testified that he received no reply from GMAC until he returned to his office after the sheriff's sale on December 3, 1969. He stated that at the time he entered the successful bid of $2,450.00 at the sheriff's sale he had no idea what the balance was on the GMAC loan.
The trial court determined that GMAC knew or should have known that the automobile on which it had a Texas lien had been removed to the State of Louisiana. The trial judge also determined that the judgment upon which the writ was issued was valid and although the trustee in bankruptcy had a perfect right to intervene and assert his claim for the proceeds of the sale, no such intervention took place. The trial court further determined that GMAC had no interest in the judgment and although the trustee in bankruptcy and Stoma had been in a position to take issue with Mrs. Miller's seizure based on this judgment, neither had done so. We agree with the findings of the trial court in these respects. It should also be stated that Stoma has made no appeal and the brief filed on behalf of the trustee in bankruptcy accepts the findings and decision of the trial court.
It would appear that the trial court and opposing counsel have adopted the reasoning applied by Judge Tate in the case of Universal C. I. T. Credit Corporation v. Hulett, 151 So.2d 705 (La.App., 3 Cir. 1963) which reads as follows:
"Thus, even though conditional sales and unrecorded chattel mortgages are not recognized in Louisiana, through comity the Louisiana courts will nevertheless enforce such transactions when validly confected in another state, even to the prejudice of innocent third persons who have dealt with the property in Louisiana providing the property has been *819 brought into Louisiana without the creditor's consent. If the chattel which was the object of the foreign conditional sale or chattel mortgage is brought into Louisiana with the consent or to the knowledge of the creditor, however, the Louisiana courts will then apply the Louisiana law and policy protecting third persons who deal with the property in Louisiana (instead of enforcing the conflicting foreign-law rights of the creditor), on the theory that the creditor consented to or intended the application of Louisiana law to dealings with the movable brought to Louisiana with his consent or to his knowledge. See, e. g.: Fisher v. Bullington, 223 La. 368, 65 So. 2d 880 and Finance Security Co. v. Mexic, La.App.Orleans, 188 So. 657 (conditional salesalso Restatement of Conflict of of Laws, Section 275 and 276); G. F. C. Corp. v. Rollins, 221 La. 166, 59 So.2d 108 and General Motors Acceptance Corp. v. Nuss, 195 La. 209, 196 So. 323 (chattel mortgagesalso Restatement, Sections 268, 269, 271).
"The cited jurisprudence relates only to the effect of the extra-state transaction insofar as affecting the rights of innocent third parties dealing with the property after it has been brought into Louisiana."
It is indeed interesting that all parties, as well as the trial judge, seem to find some comfort in this rationale. GMAC alleges as the first of two errors on the part of the trial court that the trial court, having found that defendant, Tritico, was not an innocent third purchaser because he had knowledge of the Texas lien on the Buick, nevertheless failed to apply the existing jurisprudence as enunciated in the Hulett case which applies only to innocent third parties. On the other hand defendants Tritico and Miller find comfort in the language which emphasizes that the mortgagee be without knowledge of the removal of the car from one state to another.
The evidence shows that GMAC knew of Stoma's presence in Louisiana sometime in May of 1969 and that they in fact forwarded the coupon book to him on July 2, 1969. The testimony of their employee Mr. Gibbs also shows that GMAC likewise was aware approximately one month or more prior to the sheriff's sale that the Buick was to be sold. By its own admission GMAC never recorded its mortgage in Louisiana nor did it make any attempt to do so. It is also without dispute that they made no intervention or attempted intervention in the proceedings leading to the sheriff's sale of December 3, 1969. While it is true defendant Tritico was not an innocent third party in the purest sense of the word, nevertheless upon learning from defendant Stoma that the latter owed a balance to GMAC on a Texas contract, he, Tritico, on November 24, 1969, wrote to GMAC asking for the details of this balance. It is admitted that GMAC's response was not received by defendant Tritico until after the December 3, 1969 sale.
It would appear that GMAC on at least three occasions displayed at best, a pronounced lack of diligence and at worst, sheer indifference. From May, 1969 when it first learned of Stoma's removal to the State of Louisiana, until December 3, 1969 GMAC did absolutely nothing to protect its privilege on this 1969 Buick. It is conceivable that a simple lack of diligence would have caused GMAC to delay taking any action from May until early November of 1969 at which time it learned the car was under seizure and scheduled for sale. At this point, and for approximately one month thereafter until December 3, 1969 GMAC's failure to take immediate action is difficult to explain, and no explanation has been forthcoming. Even though defendant Tritico was not an innocent third party purchaser in the strictest sense of the word, the fact that he did write to GMAC on November 24, 1969, apprising them of the seizure would indicate some manifestation of good faith on his part. *820 Accordingly we find the Hulett decision was correctly interpreted by the trial court to be in support of defendants' position.
Appellant GMAC complains that the trial judge erred in rejecting GMAC's complaint that it was without legal remedy to record its chattel mortgage in the State of Louisiana. GMAC cites as pertinent the following law:
R.S. 32:710first paragraph, provides:
"On and after December 15, 1950, the sole and exclusive method of executing and recording chattel mortgages and the priority of such mortgages which are subject to this Chapter, shall be through compliance with the provisions of this Chapter. All other chattel mortgages do not come within the provisions of the Chapter and shall continue to be governed exclusively by existing laws, particularly R.S. 9:5351-9:5365."
L.S.A. Code of Civil Procedure, Article 2334, provides:
"At the time and place designated for the sale, the sheriff shall read aloud the advertisement describing the property, and shall read aloud a mortgage certificate and any other certificate required by law."
L.S.A. R.S. 13:4344, third paragraph, provides:
"When a vehicle of the type required to be registered under R.S. 47:501 through 47:518 is to be sold under a writ of fieri facias or of seizure and sale, after reading the advertisement the sheriff shall read aloud a written statement from the motor vehicle commissioner, describing the vehicle and stating what the records of his office disclose as to the ownership of and chattel mortgages affecting such vehicle. As amended Acts 1960, No. 32, § 1."
GMAC complains that under the provisions of L.S.A.-R.S. 32:710, paragraph D it is impossible for it to record its Texas lien in the State of Louisiana without the active participation and cooperation of defendant Stoma. We agree with the trial court that defendant GMAC has no complaint since admittedly it made no effort to obtain Stoma's cooperation in the recordation of its lien. The testimony of Mr. Gibbs shows that the Stoma account was not delinquent until after the October 15, 1969 payment. Thus it would appear that since GMAC knew of the removal to the State of Louisiana as early as May of 1969 and inasmuch as Stoma did not become delinquent until October 15, 1969, that during this interval, (May to October) presumably Stoma was making his payments as agreed and also presumably by making payments he would indeed have indicated his continued good faith in complying with the terms of the contract. GMAC applied for a rehearing asking the court to consider the fact question as to whether or not it could record a Texas mortgage in the State of Louisiana without the active cooperation of the mortgagor. The trial court properly brushed this aside reasoning that GMAC had never made any effort to obtain Mr. Stoma's consent.
Appellant GMAC takes the position that Louisiana courts have never been called upon to interpret the provisions of the third paragraph of L.S.A.-R.S. 13:4344 supra. It states that as a practical matter the sheriffs have always concluded that the law is complied with insofar as any chattel mortgage certificates for sheriff's sales when a certificate is obtained from the Clerk of Court of the parish and from the Motor Vehicle Commissioner of the State of Louisiana. GMAC also takes the position that in order to close the door against the possibility of fraud and collusion it would be necessary for either the courts to interpret this particular statute as indicating that a chattel mortgage certificate should be obtained from the Motor Vehicle Commissioner of both the State of Louisiana and any foreign state in which the vehicle is registered or that the legislature *821 must change its statute to make this provision.
We have no difficulty in finding that L.S.A.-R.S. 13:4344, paragraph 3, requires the sheriff to obtain a written statement from the Motor Vehicle Commission of the State of Louisiana but makes no requirement with respect to foreign states. The pertinent portion reads as follows: "* * * the sheriff shall read aloud a written statement from the motor vehicle commissioner, * * *". It is clear that the singular is used here and it would appear logical that this reference is to the commissioner of the State of Louisiana inasmuch as this requirement is found in the Revised Statutes of the State of Louisiana. There is absolutely no reference to a requirement of a certificate or statement from any other commissioner other than that of the State of Louisiana. We have no quarrel with GMAC's observation that the legislature should change the statute to require a statement from the commissioner of a foreign state. This is clearly a function of the legislature and not the courts.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Appellant GMAC.
Affirmed. *905