In re Donald Edward IRELAND and
Brenda N. Ireland, Debtors.

Charles N. MALONE, Trustee, Plaintiff,

v.

BREWER SAVINGS BANK, Defendant.

Bankruptcy No. 80–00490.

Adv. No. 81–0015.

United States Bankruptcy Court,
M. D. Louisiana.

June 24, 1981.

Charles N. Malone, Baton Rouge, La., pro se.

Barry W. Miller, Baton Rouge, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. LEON HEBERT, Bankruptcy Judge.

Donald Edward Ireland and his wife are petitioners for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code. The trustee administering the debtors' estate has filed this adversary proceeding to avoid a chattel mortgage on one 1979 Chevrolet Chevette automobile, VIN 1BO8E9Y371259. The mortgage is held by the Brewer Savings Bank of Brewer, Maine.

The matter was heard on April 16, 1981, and submitted to the Court for decision.

## FINDINGS OF FACT

The mortgage in question was given by the debtor, Donald Edward Ireland, on July 24, 1979, and was properly recorded on the Maine certificate of title in accordance with the laws of the State of Maine.

Mr. Ireland, an employee of Pitney-Bowes, was transferred by that company to Baton Rouge on or about March 15, 1980. Eight months later, he filed a petition for relief in this Court.

It is established in the record that Mr. Ireland also had other business with the Brewer Savings Bank which held a mortgage on his residence in Maine. He had to obtain the release of that mortgage in order to effect a sale of that property shortly after his transfer to Baton Rouge. Discussions with the loan officer, William E. Lovejoy, about the sale and his transfer establish beyond a doubt that the bank knew of his change of residence—that he resided in Baton Rouge. Indeed, a letter of reference dated April 4, 1980, strongly suggests Lovejoy's knowledge (Trustee # 1).

Indeed, the check dated May 14, 1980 (see Trustee # 3), payable to Brewer Savings Bank clearly shows the debtors' address "c/o Pitney Bowes, 9434 Interline Avenue, Baton Rouge, La. 70809."

It was not until January 30, 1981 (after the filing of the bankruptcy proceeding) that the debtor registered the automobile in question in Louisiana, at which time the Motor Vehicle Bureau indicated on the certificate of registration that the Brewer Savings Bank was a first lien holder. There was no effort by the mortgage holder to perfect its lien under the Louisiana statute dealing with the recording of a lien on a Louisiana certificate of title.

## CONCLUSIONS OF LAW

■ Section 544 of the United States Bankruptcy Code (11 U.S.C. § 544) is the controlling legislation upon which this case is decided. Characteristically termed the strong arm clause of the Code (analysis of S. 2266, S.Rep.No. 95–989, 95th Cong., 2d Sess. 85 (1978)), U.S.Code Cong. & Admin. News 1978, p. 5787, it provides a bankruptcy trustee with the status and powers of a judicial lien creditor, a creditor holding an execution returned unsatisfied, and a bona fide purchaser of real property from a debtor. The extent, however, of the trustee's powers, rights, and remedies as a lien creditor are measured by the substantive law of the jurisdiction governing the property in question, here, Louisiana. 4 *Collier on Bankruptcy*, 15th Ed., ¶ 544.02, pp. 544–8.

■ Under the law of Louisiana, a seizing creditor obtains a "privilege" on the property seized which entitles him to a preference over ordinary or general creditors (LSA–C.C.P. art. 2292), and over a creditor holding an imperfect security device. *In re Pine Grove Canning Co.*, 226 F.Supp. 872, 878 (W.D.La., 1964), *aff'd*, 362 F.2d 605 (5th Cir., 1966). The failure of a security holder to perfect its foreign security interest in Louisiana after obtaining knowledge or manifesting consent as to the removal of the secured chattel would necessarily make that security interest invalid against the bankruptcy trustee. *In re Leggett*, 505 F.2d 120, 121 (5th Cir., 1974).

■ The general rule is that the validity and effect of a lien or privilege on a chattel are determined by the law of the state where the chattel was located at the time the lien was created. 14 *C.J.S.* Chattel Mortgages § 14, p. 606; 16 Am.Jur.2d, Conflicts of Law § 34, p. 49; Restatement,

Conflicts of Law 2d, § 251. Defendant, invoking the rule of comity just expressed, and sanctioned by the Louisiana Supreme Court in the case of *General Motors Acceptance Corp. v. Nuss*, 195 La. 209, 196 So.2d 323, 328, advocates that the chattel mortgage in this instance is therefore valid and enforceable, although unrecorded, in the State of Louisiana, since it is duly recorded and valid in the State of Maine, where it was originally confected; counsel for the defendant thus concludes that the rule of comity must be applied and that upon application this Court must hold that the security interest of the defendant is valid against the bankruptcy trustee.

■ Relevant here is the rule that if a foreign mortgagee knew or consented to the removal, or with due diligence would have discovered the removal, Louisiana will not apply the foreign state's law, but rather will apply its own. *Pacific Finance Loans v. Guidry*, 69 So.2d 56 (La.App., Orls., 1953); *Fiquero v. Fiquero*, 303 So.2d 801 (La.App., 3d Cir., 1974); *General Motors Acceptance Corp. v. Stoma*, 241 So.2d 816 (La.App., 3d Cir., 1970). In those instances, a plain duty rests upon the party seeking to have Louisiana recognize and enforce the unrecorded foreign chattel mortgage against an innocent third party to prove that it was without the knowledge that the car had been removed into Louisiana. *G. F. C. Corp. v. Rollins*, 221 La. 168, 59 So.2d 108 (1952). The defendant has failed to prove that it was without knowledge, since the documentary evidence showing knowledge has not adequately been refuted.

■ The drafts drawn by the debtors on funds located at Louisiana National Bank and subsequently negotiated by the mortgagee clearly display the new residence of the debtors. Existence of two letters, one a letter of reference from the defendant dated April 4, 1980, pertaining to the debtors' credit, the other a letter by the defendant approving assumption by third parties of a home mortgage the debtors apparently had with the defendant, also provide evidence that the defendant knew or should have known that the debtors were moving to Louisiana with the intent to permanently remain there. Defendant failed to contradict the evidence with any of its own which would tend to refute the finding of knowledge on its part. Applying the rule that Louisiana courts apply their own law upon a determination of consent or knowledge, this Court must so hold that the defendant was compelled to perfect its security interest under Louisiana law in order to maintain its status as a secured creditor against the bankruptcy trustee.

Germane to the obligation of the defendant, the named mortgagee herein, to record its security device is the Vehicle Certificate of Title Law, La.R.S. 32:701–734 (1950), *as amended*, more particularly § 710 of that law. La.R.S. 32:710 provides:

"On and after December 15, 1950, the sole and exclusive method of executing and recording chattel mortgages and the priority of such mortgages which are subject to this Chapter, shall be through compliance with the provisions of this Chapter. All other chattel mortgages do not come within the provisions of the Chapter and shall continue to be governed exclusively by existing laws, particularly La.R.S. 9:5351–5365.

Unlike Title 9 of the Louisiana Revised Statutes, Title 32 fails to provide a specific provision requiring a foreign mortgagee to file his lien in Louisiana within a specific period of time. There is some jurisprudence to intimate that a foreign lien or mortgage would be recognized in Louisiana for a reasonable length of time in the absence of recordation. See *In re Leggett*, supra. Apparently, however, the time limits for such recordation have been set on a case-by-case basis. See *Jones v. Bradford*, La.App., 353 So.2d 1348.

The Uniform Commercial Code, Section 9–103, to which the State of Maine subscribes, Maine R.S. 11:9–103, allows a four-month period for recordation in a different jurisdiction from that of the original recordation. The case of *General Motors Acceptance Corp. v. Stoma*, supra, provides this Court with a standard of reasonableness quite adoptable in this instance, by noting that:

"... From May, 1969 when it first learned of Stoma's removal to the State of Louisiana, until December 3, 1969 GMAC did absolutely nothing to protect its privilege on this 1969 Buick. It is conceivable that a simple lack of due diligence would have caused GMAC to delay taking any action from May until early November of 1969 at which time it learned the car was under seizure and scheduled for sale." (*General Motors Acceptance Corp. v. Stoma*, supra, at 819.)

The *Stoma* court held that the lien was invalid as to the bankruptcy trustee, under Louisiana law. Although adopting four months as an acceptable test for reasonableness of time in which the foreign mortgagee must record his security device under Title 32 of the Louisiana Revised Statutes might be unnecessary in this case, surely adopting the jurisprudence of Louisiana which suggests that seven months is an unreasonably long period of time, as the *Stoma* court so held, is proper and in this instance detrimental to the interest of Brewer Savings Bank.

In conclusion, the fact that Brewer Savings Bank knew or should have known that the motor vehicle upon which the chattel mortgage was secured was in Louisiana prevents the application of the law of Maine, but instead supports the application of Louisiana law. Applying that law, the fact that seven months went by wherein the holder of the foreign security interest did nothing to preserve its interest prevents this Court from holding that the security interest is now valid against the bankruptcy trustee. Whatever occurred after the filing of the debtors' petition is not relevant to this rule, since Section 544 of the Bankruptcy Code creates the trustee's status as a seizing judgment creditor as of the commencement of the case.

The fact that the security interest holder, Brewer Savings Bank, did not seek the cooperation of the debtor throughout the seven-month period in order to perfect its security interest in Louisiana, despite the fact that it had plenty of opportunity to do so, might very well be a lesson to others in the future—we conclude that Brewer Savings Bank is now unsecured.

Judgment will be signed for the trustee as prayed for.